Jeffrey H. Rutherford (State Bar No. 181695)
Crowell & Moring LLP
800 Wilshire Boulevard, Suite 500
Los Angeles, California  90017
Telephone:  (213) 622-4750
Fax:  (213) 622-2690
jrutherford@crowell.com

L. Barrett Boss (*pro hac vice*)
Cozen O'Connor
The Army and Navy Building
1627 I Street, N.W., Suite 1100
Washington, D.C.  20006
Telephone: (202) 912-4818
Fax: (866) 413-0172
bboss@cozen.com

Attorneys for Defendant
Peter Xuong Lam

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. CR 07-449-PSG |
| Plaintiff, | ) **DEFENDANT PETER X. LAM'S** |
| vs. | ) **OBJECTIONS TO PRESENTENCE** |
| | ) **REPORT** |
| VIRGINIA STAR SEAFOOD CORPORATION, *et al.*, | ) Sentencing Date:  May 18, 2009 |
| | ) Place:  Courtroom 790 |
| Defendants. | ) |

1
**DEFENDANT PETER X. LAM'S OBJECTIONS TO PRESENTENCE REPORT**

Defendant Peter X. Lam hereby submits the following objections to the United States Probation Office's Presentence Report ("PSR"). The PSR was disclosed to the parties on or about April 14, 2009. Sentencing is set for May 18, 2009.

Paragraphs 12, 46, and 53:

Paragraphs 12, 46, and 53 of the PSR should clarify that Mr. Lam's designation as President and Director of Virginia Star Seafood Corporation ("Virginia Star") was made by co-defendant (and fugitive) Henry Nguyen in order to shield Mr. Nguyen from liability.

As the testimony at trial confirmed, Mr. Lam had no actual control over Virginia Star (or any other business associated with Mr. Nguyen), but was a salaried employee who made the same or similar fixed salary as other employees and who did not share in the profits of any of the businesses. In other words, Mr. Lam's titles were a sham concocted by Mr. Nguyen.

In addition, as the testimony at trial confirmed, Mr. Lam's "ownership" of International Sea Product's ("ISP") stock was also a sham, perpetrated by Mr. Nguyen to shield Mr. Nguyen from liability. Mr. Lam had no actual ownership interest or control over ISP. As the PSR acknowledges elsewhere, and as the testimony at trial made clear, Mr. Nguyen controlled Virginia Star, ISP, Silver Seas, Blue Ocean and all other associated business entities. *See* PSR ¶¶ 23 and 28.[1]

Paragraphs 27, 36 and 39:

The PSR asserts that the applicable duty rate on the imported seafood at issue in this case was 63.88%. The defense objects to this duty rate.

---

[1] Mr. Nguyen was not an "employee" of Virginia Star, as set forth in the PSR. *See* PSR ¶ 11. In fact, in addition to effectively running all of the relevant businesses, *see* PSR ¶¶ 23 and 28, he either incorporated or caused to be incorporated each Virginia Star, ISP, and Silver Seas. *See* PSR ¶¶ 19-21.

1  The applicable duty rate for the imported seafood at issue should be
2  45.55%, not 63.88%. It is the defense's understanding that the imported
3  seafood at issue came from Cafatex or one of a handful of Cafatex-affiliated
4  companies. *See* PSR ¶ 24. It is also the defense's understanding that the
5  duty rate for Cafatex during the relevant time period was 45.55%. *See*
6  Administrative Message 03-2235, U.S. Customs, July 24, 2003.
7  The applicable duty rate is critical, since it is one of two figures that
8  determine the advisory guideline range (as set forth below).
9  Paragraph 31:
10 The PSR asserts that, in connection with his employment at Seafood
11 Connection, Mr. Lam "was aware of anti-dumping duties being imposed on
12 basa."
13 The defense objects to this assertion – consistent with the objection
14 asserted by the defense at trial.
15 Paragraphs 46, 50, 56, 58, 60, and 139:
16 The PSR seeks to hold Mr. Lam responsible for duties owed on the
17 entirety of the mis-labeled seafood imported by Mr. Nguyen and his various
18 companies. Specifically, the PSR seeks to hold Mr. Lam responsible for
19 $8,681,339.91 in duties owed on the importation of $13,590,075 worth of
20 mis-labeled seafood. This results in a base offense level of 26. *See* U.S.S.G.
21 § 2T4.1(K). The defense objects to this.
22 The PSR recognizes – and the testimony at trial confirms – that Mr.
23 Nguyen, not Mr. Lam, owned and controlled all of the relevant business
24 entities involved in the importation of mis-labeled seafood. *See* PSR ¶¶ 23
25 and 28. Nevertheless, the PSR asserts that Mr. Lam should be held
26 responsible for the entire amount of the tax loss because, among other
27 things, he was the "president" for Virginia Star and he was the "sole
28 stockholder for ISP" and that the conduct of other individuals associated

with Mr. Nguyen's businesses was reasonably foreseeable to Mr. Lam. *See* PSR ¶ 45.

As noted above, and as confirmed by the testimony at trial, Mr. Lam's various titles and "ownership" status in connection with Mr. Nguyen's companies was a sham concocted by Mr. Nguyen. Mr. Lam had no access to the financial documents that would have shown the sales made by other individuals associated with Mr. Nguyen's businesses (including Mr. Nguyen); he had no supervisory authority or control over other individuals associated with Mr. Nguyen's businesses (including Mr. Nguyen); he played little or no role in any aspect of Mr. Nguyen's businesses other than domestic sales; he played no role in the warehousing and transfer of the seafood imported and sold by Mr. Nguyen's businesses; and he did not share in the profits of Mr. Nguyen's enterprise (in fact, he was salaried and did not receive a commission on sales). Thus, there is no basis to conclude that the sales of co-defendant Arthur Yavelberg, Mr. Nguyen, or others were reasonably foreseeable to Mr. Lam, such that Mr. Lam can be held responsible under U.S.S.G. § 1B1.3(a).

Mr. Lam should *only* be held responsible for the duty owed on the mis-labeled seafood that *he actually sold* – which, according to the PSR, was approximately $2,900,000 worth of seafood. *See* PSR ¶ 36. This would translate to a duty owed of approximately $1,300,000 based on the 43.55% duty rate. Given the calculations set forth in the objection to Paragraph 46 (regarding the appropriate duty rate), the correct base offense level would be 22 (more than $1,000,000 and less than $2,500,000) – not offense level 26. *See* U.S.S.G. § 2T4.1(I).

Paragraph 53:

The PSR declines to impose a mitigating role adjustment for Mr. Lam, pursuant to U.S.S.G. § 3B1.2. The defense objects to this declination.

Considering all of the facts and circumstances of this case, particularly the facts established at trial, a mitigating role adjustment of 4 levels is appropriate. *See* U.S.S.G. § 3B1.2(a). This is particularly appropriate if the Court determines that Mr. Lam should be responsible for duty on the sales comprising the entire conspiracy, as set forth in Paragraphs 49 and 50 of the PSR.

Mr. Lam, who speaks only broken English, was highly subservient to Mr. Nguyen and lacked knowledge and understanding of the full scope and structure of the enterprise and of the activities of Mr. Nguyen. Mr. Lam played a minor role in Mr. Nguyen's overall scheme – even if the analysis is confined to the mis-labeled seafood sold by Mr. Lam. Mr. Lam was not involved in any of the farming, labeling, or exportation of seafood from Vietnam. Mr. Lam was not involved – except, at the very most, minimally – in the importation of seafood into the United States. Mr. Lam had limited access to importation and financial records of Virginia Star and ISP. Mr. Lam played no role with the freezer warehouses that held the seafood. Mr. Lam did not personally profit from the avoidance of any duties (like Mr. Nguyen did) – he received only a modest salary for his sales and received no commission. His title of president of Virginia Star was a sham. His "ownership" of ISP was a sham. He was – short – a low level salesperson.

In sum, these facts support a significant mitigating role adjustment.

Paragraph 66:

The PSR indicates that Mr. Lam pleaded guilty to a battery offense in 1999. Mr. Lam pleaded *nolo contendre*.

Paragraph 70:

The PSR provides information regarding an arrest in 2000. The defense objects to the characterization of this as "other criminal conduct,"

1 rather than "other arrests," given that Mr. Lam was never convicted of any
2 crime.

3     <u>Paragraph 86</u>:

4     The PSR sets forth information regarding Mr. Lam's contact with
5 certain relatives. The third sentence should read that Mr. Lam is "not" in
6 contact with Yen Lam's relatives.

7     <u>Paragraph 95</u>:

8     The PSR acknowledges that Mr. Lam is a United States citizen who
9 carries a United States passport. However, the PSR raises some ambiguity
10 based upon the inability of ICE to confirm Mr. Lam's United States
11 citizenship.

12     The defense submits that this ambiguity must be removed from the
13 PSR. Mr. Lam is definitely a United States citizen. He holds a valid United
14 States passport that has been turned over to Pretrial Services Agency and he
15 provided his naturalization certificate to the United States Probation Office.
16 That settles the matter. Given the importance of citizenship to the scoring of
17 Mr. Lam's public safety factors in the Bureau of Prisons, the PSR must be
18 amended to remove any ambiguities on this issue to avoid a potentially
19 significant injustice.

20 ///
21 ///
22 ///

1    <u>Paragraphs 155 and 156</u>:

2    The PSR indicates that no factors warrant either a downward

3 departure from the advisory guideline range, or a downward variance.

4    The defense objects to this conclusion.  The defense will address its

5 downward departure and downward variance requests in the sentencing

6 memorandum, which it will file separately.

7 DATED: May 4, 2009      Respectfully submitted,

CROWELL & MORING LLP

_____/s/_____
By:  Jeffrey H. Rutherford

COZEN O'CONNOR

_____/s/_____
By:  L. Barrett Boss, *pro hac vice*
Attorneys for Defendant
Peter Xuong Lam

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES,

I am employed in the County of Los Angeles, State of California, at Crowell & Moring at 800 Wilshire Boulevard, Suite 500, Los Angeles, California 90017. I am over the age of 18 and not a party to the within action.

On May 4, **2009**, I served the foregoing document described as **DEFENDANT PETER X. LAM'S OBJECTIONS TO PRESENTENCE REPORT** on the parties in this action by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies the following:

Judith Wheat
Adam Zaffos
Thomas A. Durkin
Nina Marino
Barbara B. Nguyen
Roger William Patton
Elinor Colbourn
Joseph Johns

In addition to the above, the following were served as follows:

Laurene Harding, United States Probation Office
312 N. Spring Street, Room 600
Los Angeles, California  90012
Phone (213) 894-3600/ Fax (213) 894-3627

☑ **(BY FACSIMILE)**
Said document was transmitted by facsimile machine to the address(es) on the service list at the facsimile numbers listed therein. I am readily familiar with my firm's practice for transmissions by facsimile. Said transmissions are sent as soon as possible and are repeated, if necessary, until they are reported as complete and without error. In sending said document by facsimile, I followed the firm's ordinary business practices. The original fax transmission confirmation report of said transmissions are attached hereto.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 4, **2009**, at Los Angeles, California.

_____/s/_____
D. Garlow